UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL B.,

Plaintiff,

                                               Case No. 1:24-cv-01173-TK

     v.

COMMISSIONER OF SOCIAL                 OPINION AND ORDER
SECURITY,

Defendant.

## OPINION AND ORDER

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's applications for disability insurance benefits and supplemental security income. That final decision was issued by the Appeals Council on September 27, 2024. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 13) and the Commissioner filed a similar motion (Doc. 15). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I.  BACKGROUND

Plaintiff protectively filed his applications for benefits on February 16, 2022, alleging a disability beginning on January 1, 2016, which date was later amended to July 29, 2020. After initial administrative denials of her applications, Plaintiff took part in a hearing before an Administrative Law Judge on September 22, 2023. Both Plaintiff and a vocational expert, Stephen Sachs, testified at the hearing.

The ALJ issued an unfavorable decision on February 28, 2024. In that decision, the ALJ found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and that he had not engaged in substantial gainful activity since his alleged onset date. Next, the ALJ determined that Plaintiff suffered from severe impairments, separating them between his Title II and Title XVI applications. As to the former, Plaintiff's severe impairments included morbid obesity, right knee degenerative joint disease, major depressive disorder, and anxiety disorder. For purposes of the Title XVI application, Plaintiff's severe impairments included morbid obesity, cervicalgia, lumbar degenerative disc disease, right knee osteoarthritis, degenerative joint disease of the left ankle status post December 2021 fracture, major depressive disorder, and anxiety related disorder. The ALJ further found that none of

these impairments, considered singly or in combination, met or equaled the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the ability to perform a limited range of sedentary work, concluding that he could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, could occasionally balance, kneel, crouch, and crawl, could frequently stoop, and had to avoid concentrated exposure heights, machinery with external moving parts, and vibration. Additionally, he could attend and focus to complete simple tasks, could interact occasionally with supervisors, coworkers, and the public, and could adapt to minor and infrequent changes to tasks or the work environment.

Plaintiff had past relevant work as a labeler machine/package machine operator and a forklift operator. The ALJ determined, based on the testimony of the vocational expert, that Plaintiff could not perform any of those jobs, but he could do unskilled sedentary jobs like hand packer, production worker, and production inspector. She also found that those jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises this argument:

The ALJ's errors evaluating the opinion evidence undermined her RFC determination, causing the RFC to lack substantial evidentiary support, and creating conflicts and internal inconsistencies in the decision, which the ALJ failed to resolve.

Plaintiff's memorandum, Doc. 13-1, at 13.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 49 years old at the time of the administrative hearing, first testified that he was currently living with his mother and his nephew. He said that he was six feet one inch tall and weighed 430 pounds. He owned a truck but drove only to doctor's appointments. His mother did the grocery shopping and his medications were delivered to his home.

Plaintiff's past work included doing multiple jobs at a cider factory, including driving a tow motor and operating a labeling machine. The latter job involved lifting about 45 pounds multiple times during the day. He was setting that machine up when he fell and injured his back. Surgery was not an option due to his weight. He had filed prior applications for disability benefits in 2016 and 2019 but both were denied.

When asked why he could no longer work, Plaintiff said that he was unable to walk,

could barely lift anything, had lost feeling in his legs, and found it difficult to control his nerves. He fell and broke his ankle in December of 2021 and was hospitalized for psychological reasons the month before that. Plaintiff testified to having been depressed for at least two years and said that it affected his motivation to seek medical treatment. Additionally, he said that his legs go numb if he stands for more than five or ten minutes and he could sit for only 20 minutes on average. He was taking hydrocodone for pain, medication for swelling in his legs, and duloxetine for his depression and anxiety. Finally, Plaintiff testified that his mother and nephew did all of the household chores because he was not able to help.

The vocational expert, Dr. Sachs, first classified Plaintiff's past work as a machine packager and a forklift operator, both of which were medium jobs. He was then asked questions about a person with Plaintiff's vocational profile who could do sedentary work with a number of postural and environmental limitations and said that such a person could work as a hand packer, production worker, and production inspector. He also gave numbers for those jobs as they existed in the national economy. Next, he was asked questions about a person who could do light work with the same limitations, and said that the person could still do the sedentary jobs he identified. Using a cane would not change that answer, but having to elevate the legs would eliminate those jobs. When mental limitations were added, Dr. Sachs said that the person could still perform those jobs. Finally, he said that during a 45-day probationary period, no absenteeism of off-task behavior would be tolerated, and after that an employee could be absent once every 45 days and off task for 10% of the time without losing employment.

### B. Medical Evidence

The relevant medical records show the following. Plaintiff underwent a mental health assessment in 2019 where he reported a long history of depression. He also said he had learning disabilities and struggled with reading and writing. It was recommended that he be linked with a psychiatrist for medication and that he participate in biweekly therapy sessions. Subsequent treatment notes show that his memory was intact and he had the ability to attend and maintain focus. However, he also reported constant anxiety and panic attacks. He was discharged from therapy after 14 sessions because of non-compliance with treatment. Plaintiff was also hospitalized for several days in 2021 as a result of a suicide attempt. He subsequently began individual counseling with Horizon, and those notes show a diagnosis of major depressive disorder of moderate severity and generalized anxiety disorder.

The record includes a number of diagnostic test results. X-rays of the cervical spine showed degenerative changes at C5-6. A CT scan of his left ankle taken in 2021 indicated a fracture and swelling. A follow-up study done in 2022 showed the results of a prior surgery including a incomplete fusion as well as multiple small fracture fragments. Treatment notes from Dr. Stahl, who saw Plaintiff every three weeks for testosterone injections, indicate, among other things, that Plaintiff's low back pain was stable with hydrocodone and that his ankle fracture was slow to heal. Plaintiff also underwent gall bladder surgery in 2020, which was uneventful. Finally, there are notations of his having fractured his back sometime in the past.

## C. Opinion Evidence

Plaintiff saw Dr. Liu for a consultative internal medicine examination on July 14, 2022. He reported whole body pain of several years' duration and, more specifically, low back pain radiating to both legs with associated numbness and tingling. His weight was measured at 471 pounds and he was walking with a cane. There was some limitation of range of motion of the lumbar spine and straight leg raising was positive. His hand and finger dexterity was also intact. Dr. Liu concluded that Plaintiff had a moderate limitation for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weights, and prolonged sitting and standing. (Tr. 1439-42).

On the same day, Plaintiff underwent a psychiatric evaluation performed by Dr. Ransom. At that time, he was trying to get into counseling and was taking medication prescribed by his primary care physician. He said that it was helping him to reduce symptoms of depression and anxiety. Plaintiff had a mildly restricted affect and had intact attention and concentration as well as recent and remote memory. His activities of daily living included caring for himself, doing some light household chores, driving, staying in touch with family and friends, and watching television. Dr. Ransom believed he had a number of mild limitations in work-related functions. (Tr. 1443-46).

Plaintiff's physician, Dr. Stahl, and his physician's assistant, Melissa Iversen, signed a letter on October 26, 2022 stating that Plaintiff could interact appropriately with coworkers but struggled to understand and carry out instructions. Additionally, he could not stand, sit, or walk for more than 20 minutes at a time and could not lift or carry more than 30-50 pounds. (Tr. 1471). Dr. Stahl's treatment notes also contain an opinion that Plaintiff's ability to sit was severely limited.

State agency reviewers also expressed opinions as to Plaintiff's functional capacity. Dr. Lawrence and Dr. Koenig concluded that the Title II claim was insufficient from a physical standpoint, and Dr. Roy-Petrick and Dr. Dekeon said the same about the Title II psychological claim. As to the Title XVI claim, Dr. Lawrence and Dr. Koenig said that Plaintiff could perform the lifting requirements of light work with postural limitations but could only stand and walk for two hours per day, while Dr. Roy-Petrick found Plaintiff's mental impairments to be nonsevere. However, the other psychological reviewer, Dr. Dekeon, thought Plaintiff had a moderate limitation in his ability to carry out detailed instructions and to maintain attention and concentration for extended periods. He had the same degree of limitation in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. He was also moderately limited in his ability to interact appropriately with the general public and with peers and also to accept instructions and criticism from supervisors. Finally, he was

moderately limited in his ability to respond appropriately to changes in the work setting.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV.  DISCUSSION

#### A.  Evaluation of Opinion Evidence

As his first claim of error, Plaintiff asserts that the ALJ erred by failing properly to assess the opinions of Dr. Liu and Dr. Stahl.  He notes that under current regulations, the two key factors used to evaluate expert opinions are supportability and consistency, and argues that the ALJ did not test those two opinions for consistency and supportability with their own findings and with the other evidence of record. Plaintiff also contends that Dr. Liu's finding of a significant impairment in prolonged sitting is not consistent with the determination that he could perform sedentary work and that the ALJ did not have a proper basis for rejecting Dr. Stahl's views about Plaintiff's ability to sit for a prolonged period of time.  The Commissioner responds that the ALJ did use the appropriate method of analysis and correctly discounted these opinions

in favor of a finding that Plaintiff had the capacity to do the jobs identified by the vocational expert.

20 C.F.R. § 404.1520c identifies five factors to be considered when evaluating an expert medical opinion.  They are: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. As this Court has said,

> [s]upportability and consistency are the most important of the five regulatory factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Accordingly, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). The ALJ may, but is not required to, explain how he considered the remaining three factors. *Id*. An ALJ's failure to explain the supportability and consistency of the medical opinions or prior administrative medical findings in the record is procedural error. *Loucks v. Kijakazi,* No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Id*. (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alterations omitted).

*Brianne S. v. Comm'r of Soc. Sec*., 2023 WL 6225249, at *4 (W.D.N.Y. Sept. 26, 2023).

After summarizing the findings from Dr. Liu's consultative examination of Plaintiff, the ALJ noted that Dr. Liu found a number of "moderate" limitations which included prolonged walking, sitting, and standing.  The ALJ then observed that "Dr. Liu did not specifically define the term "moderate" in functional terms."  (Tr. 20).  She further rejected his opinion that Plaintiff needed to use a cane because "there is no documentation that this assistive device was required for a complete twelve-month period."  *Id*.  She therefore concluded that his opinion was unpersuasive.

The ALJ next turned to Dr. Stahl's opinion.  She found his two opinions about Plaintiff's ability to sit, stand, or walk only somewhat persuasive, reasoning that these restrictions were not supported either by the treatment record or by his activities of daily living.  She viewed the treatment evidence as not identifying any specific neurological or physiological deficits.  It appears that the only portion of Dr. Stahl's opinion she found to be persuasive was his conclusion that Plaintiff struggled to understand and carry out instructions.  (Tr. 20).  After making this determination, she found the state agency opinions as to Plaintiff's physical capacity to be generally persuasive, reasoning that "[t]he claimant's treatment record documents some ongoing physical limitations, but the claimant has been selectively compliant with his recommended treatment."  (Tr. 21).

The Court finds the ALJ's evaluation of these two expert opinions, both of which either

suggest or directly state that Plaintiff cannot perform the sitting requirements of sedentary work (at least without some sort of sit/stand opinion) to be lacking.  First, the ALJ made no explicit comparison of Dr. Liu's conclusions with the record, including Dr. Stahl's opinion, rejecting it only because there was no documentation concerning the need to use a cane (which the vocational expert said was irrelevant to Plaintiff's ability to do sedentary work) and because the term "moderate" was undefined.  While terms like "moderate" may, in some circumstances, be too vague to be relied on, it is important to remember that they may be given context by the record as a whole, including the findings made by the examiner who used that terminology.  *See, e.g., Phillips v. Comm'r of Soc. Sec.*, 2018 WL 1768273 (N.D.N.Y. Apr. 11, 2018).  Dr. Liu's examination revealed positive straight leg raising in both the supine and seated positions and his diagnoses included both chronic whole body pain and arthritis.  Plaintiff consistently took hydrocodone for pain and had also been prescribed celebrex and baclofen.  Some examination notes indicate he was unsteady moving form a chair to the examination table.  None of this evidence was discussed by the ALJ but it is relevant to the issues of consistency and supportability.

As to Dr. Stahl, the ALJ determined, in part, that his opinion was inconsistent with Plaintiff's activities of daily living.  But, among other things, Dr. Stahl's notes show that Plaintiff struggled on a daily basis to shower or use the toilet due to the length of time needed to sit or stand for those activities.  Plaintiff testified that he could not walk and that he lost feeling in his legs if he stood for more than five or ten minutes.  He also said that if he sat for more than 20 minutes he would experience cramping an numbness in his legs and that they were swollen more than 90% of the time, and he testified to using a shower chair and having difficulty bending or twisting even to make his own bed.  It is not clear how this description of his activities of daily living is inconsistent with Dr. Stahl's opinion.  Because the Court has found that the ALJ erred in evaluating these opinions, and because that error is not harmless, the case must be remanded for further proceedings.

### B.  Psychological Limitations

As part of his claim of error, Plaintiff asserts that the ALJ did not incorporate certain psychological limitations identified by both Dr. Ransom and the state agency reviewer into the residual functional capacity finding.  The Court's decision to remand based on the first claim of error largely moots this issue, but the Court does agree that an ALJ must consider the functional limitations, if any, arising even from nonsevere impairments in making a residual functional capacity determination.  *See, e.g., Rucker v. Kijakazi*, 48 F.4th 89, 92 (2d Cir. 2022), citing SSR 85-15.  On remand, the ALJ should follow this legal principle.

### V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 13), **DENIES** the Commissioner's motion (Doc. 15), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four..

**/s/ Terence P.  Kemp**
**United States Magistrate Judge**